IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| CARRODY M. BUCHHORN, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | CIVIL ACTION |
| | ) | |
| v. | ) | No. 24-2580-KHV |
| | ) | |
| THE BOARD OF COUNTY | ) | |
| COMMISSIONERS OF THE COUNTY | ) | |
| OF DOUGLAS COUNTY, KANSAS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

_____

### MEMORANDUM AND ORDER

On December 16, 2024, Carrody M. Buchhorn, Timothy D. Buchhorn, Gregory W. Snell and Matthew T. Buchhorn filed suit against the Board of County Commissioners of the County of Douglas County, Kansas, the City of Eudora, Kansas and Erik Mitchell, Suzanne Valdez and Joshua Seiden in their individual capacities. Plaintiffs allege that defendants arrested, prosecuted and imprisoned Carrody Buchhorn for a crime that she did not commit.

Plaintiffs assert eight counts under 42 U.S.C § 1983. Specifically, Buchhorn claims that (1) in violation of the Fourteenth Amendment, Mitchell, Valdez and Seiden fabricated and perpetuated a knowingly false cause of death of a purported victim; (2) in violation of the Fourteenth Amendment, Mitchell, Valdez and Seiden conspired to fabricate and perpetuate a knowingly false cause of death; (3) in violation of the Fourteenth Amendment, Mitchell intentionally withheld and suppressed exculpatory evidence in violation of Brady v. Maryland, 373 U.S. 83 (1963), and fabricated false evidence to obtain her conviction; (4) in violation of the Fourth and Fourteenth Amendments, Mitchell subjected her to judicial proceedings for which no probable cause existed; and (5) in violation of the Fourth Amendment, Douglas County, Eudora,

Valdez and Seiden seized, destroyed or took her property without just compensation. All plaintiffs claim that (1) in violation of the First and Fourteenth Amendments, defendants conspired to deprive Buchhorn of the care, custody, control and association of her children and association with her husband; (2) Douglas County and Eudora maintained a policy, practice or custom of unconstitutional misconduct; and (3) in violation of the First and Fourteenth Amendments, Mitchell deprived plaintiffs of their right to familial association.

This matter is before the Court on The Defendant Erik Mitchell's Motion To Dismiss Amended Complaint (Doc. #62) filed April 3, 2025 and Defendant The Board Of County Commissioners Of The County Of Douglas County Kansas' Motion To Dismiss Plaintiffs' Amended Complaint For Failure To State A Claim (Doc. #64), Motion To Dismiss The City Of Eudora, Kansas From Plaintiffs' Amended Complaint (Doc. #66), Joint Motion To Dismiss By Defendants Joshua Seiden & Suzanne Valdez (Doc. #68) and Motion To Take Judicial Notice And Brief In Support By Defendants Josh Seiden & Suzanne Valdez (Doc. #70), all filed April 4, 2025. For reasons stated below, the Court sustains in part and overrules in part the motions to dismiss by Douglas County and Mitchell. It sustains the motions to dismiss by the City of Eudora, Valdez and Seiden. It overrules as moot Valdez and Seiden's motion for judicial notice.

## Legal Standard

In ruling on a motion to dismiss for failure to state a claim under Rule 12(b)(6), Fed. R. Civ. P., the Court assumes as true all well-pleaded factual allegations and determines whether they plausibly give rise to an entitlement to relief. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim which is plausible—and not merely conceivable—on its face. Id. at 679–80; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In determining whether a complaint states a plausible claim

for relief, the Court draws on its judicial experience and common sense. Iqbal, 556 U.S. at 679.

The Court need not accept as true those allegations which state only legal conclusions. See id. Plaintiffs bear the burden of framing their claims with enough factual matter to suggest that they are entitled to relief; it is not enough to make threadbare recitals of a cause of action accompanied by conclusory statements. See Twombly, 550 U.S. at 556. Plaintiffs make a facially plausible claim by pleading factual content from which the Court can reasonably infer that defendants are liable for the alleged misconduct. Iqbal, 556 U.S. at 678. Plaintiffs must show more than a sheer possibility that defendants have acted unlawfully—it is not enough to plead facts that are "merely consistent" with defendants' liability. Id. (quoting Twombly, 550 U.S. at 557).

A pleading which offers labels and conclusions, a formulaic recitation of the elements of a cause of action or naked assertions devoid of further factual enhancement will not stand. Id. Similarly, where the well-pleaded facts do not permit the Court to infer more than the mere possibility of misconduct, the pleading has alleged—but has not "shown"—that the pleader is entitled to relief. Id. at 679. The degree of specificity necessary to establish plausibility and fair notice depends on context, because what constitutes fair notice under Rule 8(a)(2), Fed. R. Civ. P., depends on the type of case. Robbins v. Okla., 519 F.3d 1242, 1248 (10th Cir. 2008).

**Factual Background**

Highly summarized, plaintiffs' amended complaint alleges as follows:

The Board of County Commissioners of the County of Douglas County, Kansas ("Douglas County") is a Kansas municipality. The Douglas County Sheriff's Office, District Attorney's Office and Coroner's Office are agencies and departments of Douglas County. The City of Eudora, is also a Kansas municipality. The Eudora Police Department is an agency and department of the municipality.

Between June 5, 1996 and November 1, 2021, Dr. Erik Mitchell served as District Coroner. Mitchell possessed a well-documented and well-publicized history of unethical, unprofessional and illegal activities from his time as Medical Examiner of Onondaga County, New York. After Onondaga County prosecutors found that Mitchell had routinely removed organs from corpses—many of whom were children—and donated them without the consent of the victims' families, he resigned. To flee prosecution in New York, Mitchell moved to Kansas. Despite his well-publicized history, Douglas County employed Mitchell over the span of 25 years.

At times relevant to this lawsuit, Suzanne Valdez was the District Attorney of Douglas County and supervised the Douglas County District Attorney's Office. Specifically, she supervised Joshua Seiden, an Assistant District Attorney. On December 28, 2020, before taking office, Valdez testified that she was inheriting many "botched cases" and would "need every bit of luck I can get." Amended Complaint (Doc. #59) filed March 21, 2025, ¶ 259. During her time as District Attorney, the District Attorney's Office received multiple complaints of misconduct by Valdez and Seiden. At one point, Douglas County had to allocate more money to address multiple complaints and ethics investigations.

## I.    Mitchell's Autopsy And Report Of Death

In 2016, Carrody Buchhorn, a married mother of two, worked at an in-home child daycare in Eudora. On September 29, 2016, Buchhorn found nine-month old O.O. unresponsive following an afternoon nap.[1] Buchhorn attempted CPR until the paramedics arrived. Despite their efforts at resuscitation, O.O. died.

After O.O. died and before an autopsy, Mitchell and other unnamed individuals removed

---

[1]    Pursuant to Federal Rule of Civil Procedure 5.2(a)(3) and the Court's Administrative Procedures, the Court refers to the minor by his initials.

his heart for donation.  Dr. Shannon M. Mackey-Bojack, Medical Director of the Jesse E. Edwards Registry of Cardiovascular Disease at United Hospital in St. Paul, Minnesota, examined the heart after it was removed.  A forensic and cardiovascular pathologist and Board Certified in Pathology, Mackey-Bojack specializes in examining cardiac tissue.  Her examination revealed that the heart had a patent foramen ovale which, based on O.O.'s age, was a congenital heart defect.  Mackey-Bojack's cardiac autopsy concluded that the left ventricle wall of O.O.'s heart was deprived of oxygen (ischemic damage) and because this damage lacked changes to the cells, this pathophysiologic process took place between 12 to 24 hours before his death.

Detectives with the Eudora Police Department recorded Mitchell's autopsy.  Mitchell did not see O.O.'s heart during his autopsy.  Initially, Mitchell repeatedly stated that he could not explain or identify O.O.'s cause of death.  During the autopsy—without identifying a cause of death, without laboratory test results and before receiving Mackey-Bojack's cardiac report—Mitchell suggested or speculated that

1. O.O. was stepped on;

2. Mrs. Buchhorn has "brought suspicion;"

3. O.O. was harmed immediately before he died;

4. The lack of brain swelling or injury to the brain means O.O. was injured immediately before he died, and it would have been obvious to a caregiver who failed to provide adequate care quickly enough to save O.O.;

5. There was a "very strong possibility" Mrs. Buchhorn dropped O.O.;

6. "Obviously somebody is at fault" for O.O.'s death;

7. "Statistically, it's more likely" that someone intentionally killed O.O.;

8. "Something happened the day he died. It was bad. Someone should have provided care earlier than they did."

Id., ¶ 88.  At the time of these statements, Mitchell knew that Buchhorn was the only adult with

O.O. when he died.

On June 13, 2017, Douglas County and Eudora issued Mitchell's report of death. As noted, Mitchell did not possess O.O.'s heart at the time of his autopsy. Nevertheless, his report stated that the heart's fossa ovalis was closed, meaning that O.O. had a normal heart and did not die from a heart defect. His report directly contradicted Mackey-Bojack's report, which Mitchell possessed before he issued his report of death.

## II.    Buchhorn's Prosecution, Conviction And Release

Douglas County, Eudora and Mitchell knew that Mitchell's statements about O.O.'s cause of death were false. Nevertheless, Douglas County and Eudora interrogated Buchhorn repeatedly, subjected her home, clothing, electronics and documented communications to a rigorous forensic examination and interviewed other parents from the daycare to search for evidence of guilt. They obtained no inculpatory information.

On April 14, 2017, the District Attorney's Office filed an information against Buchhorn in the Douglas County District Court, charging her with O.O.'s murder. The information relied entirely on Mitchell, his theory of death and his suppression of Mackey-Bojack's cardiac autopsy report. Detective Daniel Flick with the Eudora Police Department submitted an affidavit to support the arrest warrant. Flick's affidavit relied solely on Mitchell's report and theory as to O.O.'s death.

During the preliminary hearing after Buchhorn's arrest, Mitchell testified that "going on statistics," O.O. died instantaneously due to a blow to the head that had a "direct effect on depolarization of neurons at the area of the base of the brain, upper spinal cord manila, [which] interferes with the ability to breathe, and that leads to death." Id., ¶ 115. Further, he stated that "we have a child who has no anatomic disease process or anatomic deformity or no anatomic reason to be dead other than the physical injury, and that this physical injury will release energy

into the area that is critical for survival at the base of the brain, and that is, if you will satisfy, is the simplest most straightforward explanation."  Id., ¶ 117.  Mitchell claimed that O.O. died instantly from the injury and therefore the only potential suspect could be Buchhorn.  The Douglas County district court found that probable cause existed to continue Buchhorn's prosecution. [2]

At trial, Mitchell again offered this same theory: that O.O. died due to a blow to the head which interfered with the brain's ability to control breathing, causing O.O. to stop breathing and immediately or nearly immediately suffocate.  Mitchell testified that O.O. had a normal heart and no other diseases to explain his death.  At trial, the prosecution did not produce the Mackey-Bojack report.  On July 26, 2018, the jury found Buchhorn guilty based on the only evidence offered by Douglas County, Eudora and Mitchell: Mitchell's perjury.

After trial but before sentencing, Buchhorn obtained new counsel.  Buchhorn's new counsel hired five experts to challenge Buchhorn's conviction at a post-trial hearing.  The experts testified that (1) Mitchell's cause of death theory was unreliable and false, (2) a neurologist, and potentially a biomedical engineer, should have opined at trial on Mitchell's theory and (3) Buchhorn lacked the psychological ability to murder a baby.[3]  At the post-trial hearing, Mitchell admitted that contrary to his prior representations to the court, no statistics support his cause of death theory and his "depolarization" theory was something he created to support Buchhorn's prosecution.[4]

Despite the expert testimony and admissions from Mitchell, on November 18, 2019, the

---

[2]    Plaintiffs do not allege the names of the District Attorneys involved in Buchhorn's prosecution, trial and post-trial hearings.

[3]    Plaintiffs do not allege the date of this post-trial hearing.

[4]    Even though Mitchell admitted perjury during Buchhorn's criminal trial, Valdez, Seiden, the District Attorney's Office and/or Douglas County refused to prosecute him.

district court denied Buchhorn's motion for a new trial and sentenced her to 123 months in prison. Buchhorn appealed. On August 16, 2021, the Kansas Court of Appeals reversed the district court's denial of a new trial and remanded the case based on ineffective assistance of counsel. Douglas County, Eudora, Valdez and Seiden appealed the reversal to the Kansas Supreme Court. On August 19, 2022, the Kansas Supreme Court affirmed the reversal.

On October 5, 2022, Douglas County, Eudora, Valdez and Seiden announced that they had abandoned Mitchell and his cause of death theory. On November 1, 2022, absent Mitchell's testimony, the district court found that Buchhorn's presence near O.O. at the time of death was insufficient to establish probable cause. The district court ordered a new preliminary examination (scheduled for January 17, 2023) and jury trial (scheduled for March 13, 2023). Valdez and Seiden hired Dr. Jane Turner, M.D. to evaluate Mitchell's work and find a cause of death.

On November 14, 2022, given the district court's finding of insufficient probable cause, Buchhorn filed a Verified Petition for Writ of Habeas Corpus with the Kansas Court of Appeals. The Kansas Court of Appeals ordered that by 5:00 P.M. on December 16, 2022, the prosecution file a status report whether it had produced an expert report required to show probable cause. In their status report dated December 16, 2022, the District Attorney's Office admitted that it did not submit an expert report. Buchhorn again requested her immediate release from custody. That same day, December 16, 2022, Kansas District Judge Sally Pokorny dismissed Buchhorn's criminal case based on failure to produce an expert report which established a cause of death. By this date, Buchhorn had been detained for almost six years—more than 2,000 days.

On January 3, 2023, Douglas County, Valdez and Seiden received Turner's report. Turner wrote, "The autopsy finding of a patent foramen ovale is significant in that this congenital heart defect put [O.O.] at risk for a lethal arterial stroke. Such a stroke is ischemic and, therefore,

undetectable at autopsy when the death is sudden."  Id., ¶ 214.  Turner reached the following

conclusion:

> In short, the evidence from the autopsy indicates that [O.O.] had a congenital heart
> defect that predisposed him to pathophysiologic processes that began at least 12–
> 24 hours before his death, and which continued and progressed as he was being
> resuscitated. He had hyperglycemia, hypothermia, and bacterial and viral infections
> at the time of his death. The skull fracture pre-existed Oliver's illness and was non-
> lethal, asymptomatic, and without pathologic sequelae. The liver laceration and
> bruising on the chest and abdomen are injuries consistent with injuries caused by
> cardiopulmonary resuscitation.

Id., ¶ 219.  Turner believed that O.O. died from natural disease and pathophysiologic processes

unrelated to child abuse.

On January 5, 2023, Buchhorn and Douglas County, Eudora, Valdez and Seiden informed

the Kansas Court of Appeals of Turner's conclusion.  On January 17, 2023, the Kansas Court of

Appeals dismissed Buchhorn's habeas action as moot because she had previously been released

from custody, and Douglas County, Eudora, Valdez and Seiden represented that they had no intent

to continue her prosecution.[5]

## III.    Valdez And Seiden's Statements

On January 4, 2023, Valdez issued a statement—primarily written by Seiden—regarding

Buchhorn's case.   The statement (1) blamed Douglas County—not Valdez or the District

Attorney's Office—for hiring Mitchell; (2) claimed that the District Attorney's Office believed

that it would be "prudent to contract with independent experts," and not with Mitchell; (3) admitted

that Mitchell's misconduct was widely known and "fully chronicled in both local and national

media;" (4) confessed that because Mitchell's reputation was so poor, Valdez refused to use

---

[5]      The complaint does not specifically allege when Buchhorn was released from
custody, but the Court infers that it occurred on December 16, 2022, when the district court
dismissed all charges.

Mitchell as a witness; and (5) admitted that Turner had found "within a reasonable degree of medical certainty, that [O.O.] died from natural disease and pathophysiologic processes unrelated to child abuse." Id., ¶ 226. She asserted, however, that "other evidence [existed] to support [Buchhorn's] prosecution." Id.

One month later, on February 4, 2023, Valdez and Seiden made a public presentation on prosecutorial discretion to a group of concerned citizens of Douglas County. During the presentation, Valdez and Seiden again admitted that Mitchell had lied in Buchhorn's prosecution. Valdez and Seiden also represented that (1) they possessed a child abuse expert who claimed that Buchhorn abused O.O.; (2) "there is other evidence that we cannot comment on—believe me— there was other evidence;" (3) "[b]ased on the evidence that we saw . . . I have reviewed all of these cases that have come before me. We had the evidence to go forward;" and (4) "[Buchhorn]'s not exonerated. That's another thing I want to make clear, okay?" Id., ¶ 237.

## IV.    Buchhorn's Missing Property

Before Buchhorn arrest, on October 1, 2016, the Eudora Police Department had executed a search warrant and seized clothing that Buchhorn had worn on the day O.O. died. On October 5, 2016, the Douglas County District Court issued a search warrant for Buchhorn's home for her electronic devices "for the purpose of recovering chats, emails, pictures, and Internet search activity related to death and [the] death investigation of [O.O.]." Id., ¶ 181. As part of that search, the Eudora Police Department seized Buchhorn's MacBook Pro computer. Neither side used any of the seized property at Buchhorn's criminal trial.

On December 19, 2022, after the Douglas County district court dismissed all charges against her, Buchhorn asked the Douglas County Sheriff's Office to return her personal property. The Sheriff's Office told her to contact the District Attorney's Office. Seiden informed Buchhorn

that because the prosecution had filed a notice of appeal, her case was still pending and therefore they could not release her property. Seiden told Buchhorn's counsel, "You have received discovery, which would include a property log. Please provide the property numbers of the items you are seeking returned." Id., ¶ 188. During discovery, however, the prosecution never provided counsel any property logs.

On January 17, 2023, Buchhorn's counsel called the District Attorney's Office,[6] which informed her counsel that (1) on January 13, 2023, it had directed the Eudora Police Department to release all of Buchhorn's property; (2) her laptop was logged with an erroneous typo, which had since been corrected; and (3) Buchhorn could immediately retrieve her property. That day, Buchhorn went to retrieve her property, but the Eudora Police Department receptionist informed her that it did not possess her laptop and had never received it from the District Attorney's Office. She did receive her damaged clothing.

Seiden informed Buchhorn's counsel that "While that is undeniably problematic, it is simply not a problem that the District Attorney's Office can resolve . . . If Buchhorn intends to seek recourse for the loss of said laptop, it is a matter which would be more appropriately addressed by the agency tasked with its storage, not this office." Id., ¶ 200. To date, Buchhorn has not received her computer.

## V.    Procedural History

On December 16, 2024, Carrody Buchhorn, her husband and children filed suit against Douglas County, Eudora, Mitchell, Valdez and Seiden. On March 21, 2025, plaintiffs filed their amended complaint, which asserts the following eight claims under Section 1983:

> Count 1: Mitchell, Valdez and Seiden deprived Buchhorn of her Fourteenth Amendment right to a fair trial by fabricating and perpetuating a knowingly false

---

[6]    The complaint does not allege who Buchhorn's counsel spoke with on this call.

and nonexistent cause of death.

Count 2: Mitchell, Valdez and Seiden conspired to deprive Buchhorn of her Fourteenth Amendment right to a fair trial by fabricating and perpetuating a knowingly false and nonexistent cause of death.

Count 3: Mitchell deprived Buchhorn of her Fourteenth Amendment right to a fair trial by intentionally (1) withholding and suppressing exculpatory evidence in violation of Brady v. Maryland, 373 U.S. 83 (1963), and (2) fabricating false evidence to obtain her conviction.

Count 4: Mitchell deprived Buchhorn of her Fourth Amendment right to be free from unreasonable seizure and her Fourteenth Amendment right to due process by causing her to be unreasonably seized and subjected to judicial proceedings for which no probable cause existed.

Count 5: Defendants conspired to deprive Buchhorn of her First and Fourteenth Amendment liberty interests in the care, custody, control and association of her children and association with her husband by (1) maliciously causing Buchhorn's prosecution; (2) fabricating and perpetuating false evidence used to detain and convict her; (3) withholding exculpatory evidence; (4) pursuing an appeal and retrial post-reversal; and (5) continuing to publicly declare Buchhorn's guilt following the district court's dismissal of the charges.

Count 6: Douglas County and Eudora are liable for actions of the Sheriff's Office, the District Attorney's Office, the Coroner's Office, Mitchell, Valdez and Seiden because they maintained a policy, practice or custom of unconstitutional misconduct, including informal policies, procedure and customs that created a widespread practice of government officials abusing their government authority.

Count 7: Mitchell deprived plaintiffs of their First and Fourteenth Amendment rights to familial association by (1) causing Buchhorn's arrest and unlawful detainment; and (2) fabricating false evidence, committing perjury and suppressing exculpatory evidence, which caused her wrongful incarceration and conviction.

Count 8: Douglas County, Eudora, Valdez and Seiden deprived Buchhorn of her Fourth Amendment right to be free from unreasonable seizure and her Fourteenth Amendment right to due process by (1) unreasonably seizing her property; (2) destroying her property; and/or (3) taking her property without just compensation.

See id. Individually, Buchhorn brings Counts 1, 2, 3, 4 and 8. Collectively, plaintiffs bring Counts 5, 6 and 7.

Defendants have filed four motions to dismiss plaintiffs' amended complaint. See The

Defendant Erik Mitchell's Motion To Dismiss Amended Complaint (Doc. #62); Defendant The Board Of County Commissioners Of The County Of Douglas County Kansas' Motion To Dismiss Plaintiffs' Amended Complaint For Failure To State A Claim (Doc. #64); Motion To Dismiss The City Of Eudora, Kansas From Plaintiffs' Amended Complaint (Doc. #66); Joint Motion To Dismiss By Defendants Joshua Seiden & Suzanne Valdez (Doc. #68). On April 4, 2025, Valdez and Seiden filed a joint motion for judicial notice. Motion To Take Judicial Notice And Brief In Support By Defendants Josh Seiden & Suzanne Valdez (Doc. #70).

Under Rule 12(b)(6), Mitchell asks the Court to dismiss all claims against him. Mitchell argues that (1) the statute of limitations bars plaintiffs' claims; (2) he is entitled to qualified immunity on all claims; and (3) to the extent plaintiffs' claims arise from his testimony at Buchhorn's trial, he is entitled to absolute immunity.

Under Rule 12(b)(6), Douglas County and Eudora ask the Court to dismiss all claims against them. Douglas County and Eudora argue that (1) because plaintiffs have not alleged a municipal policy or custom, they have failed to state a claim for municipal liability under Section 1983; (2) because plaintiffs have not alleged an agreement among defendants to deprive Buchhorn of a constitutional right, plaintiffs fail to state a claim for conspiracy; and (3) because an adequate post-deprivation remedy exists under Kansas law for seized items, Buchhorn fails to state a claim for deprivation of property.

Under Rule 12(b)(6), Valdez and Seiden ask the Court to dismiss all claims against them. Valdez and Seiden argue that (1) they are entitled to absolute prosecutorial immunity on Counts 1, 2 and 5; (2) they are entitled to qualified immunity on all counts; (3) the statute of limitations bars plaintiffs' claims; (4) because plaintiffs have not alleged an agreement among defendants to deprive Buchhorn of a constitutional right, plaintiffs fail to state a claim for conspiracy; (5) as

individuals, they are improper defendants for a taking of property without just compensation claim; and (6) because an adequate post-deprivation remedy exists under Kansas law for seized items, Buchhorn fail to state a claim for deprivation of property.

<u>**Analysis**</u>

**I.    Mitchell's Motion To Dismiss**

As noted, plaintiffs allege that Mitchell (1) fabricated and perpetuated a knowingly false cause of death (Count 1); (2) conspired to deprive Buchhorn of her constitutional right to a fair trial by fabricating and perpetuating a knowingly false cause of death (Count 2); (3) withheld and suppressed exculpatory evidence in violation of <u>Brady</u>, and fabricated false evidence (Count 3); (4) caused Buchhorn to be unreasonably seized and subjected to judicial proceedings for which no probable cause existed (Count 4); (5) conspired to deprive Buchhorn of her constitutional liberty interests in the care, custody, control and association of her children and association with her husband by (a) maliciously causing Buchhorn's prosecution, (b) fabricating and perpetuating false evidence to detain and convict her, (c) withholding exculpatory evidence, (d) pursuing an appeal and retrial post-reversal and (e) continuing to publicly declare Buchhorn's guilt following the district court's dismissal of the charges (Count 5); and (6) deprived plaintiffs of their constitutional right of familial association by (a) causing Buchhorn's arrest and unlawful detainment and (b) fabricating false evidence, committing perjury and suppressing exculpatory evidence, which caused her wrongful incarceration and conviction (Count 7).

As noted, Mitchell seeks to dismiss Counts 1, 2, 3, 4, 5 and 7 for failure to state a claim upon which relief may be granted.  Mitchell argues that (1) the statute of limitations bars plaintiffs' claims; (2) he is entitled to qualified immunity; and (3) to the extent plaintiffs' claims arise from his testimony at Buchhorn's trial, he is entitled to absolute immunity.

A.     Whether The Statute Of Limitations Bars Counts 1, 2, 3, 4, 5 And 7

Mitchell argues that the statute of limitations bars all claims against him.  Although statute of limitations is an affirmative defense, the Court may appropriately resolve a statute of limitations question on a Rule 12(b)(6) motion "when the dates given in the complaint make clear that the right sued upon has been extinguished."  Aldrich v. McCulloch Props., Inc., 627 F.2d 1036, 1041 n.4 (10th Cir. 1980).

Plaintiffs filed suit under Section 1983.  Section 1983 provides a federal civil cause of action against state officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution."  42 U.S.C. § 1983.  For purposes of a Section 1983 claim, the Court borrows the statute of limitations from the personal injury laws of the state in which the claim arose.  Wallace v. Kato, 549 U.S. 384, 387 (2007); McCarty v. Gilchrist, 646 F.3d 1281, 1289 (10th Cir. 2011).  Accordingly, for Section 1983 claims arising in Kansas, the Court applies a two-year statute of limitations.  See K.S.A. § 60–513(a)(4).

To determine when the claim begins to accrue, the Court applies federal law.  McCarty, 646 F.3d at 1289.  As a general rule, because the injury under a Section 1983 claim is a violation of a constitutional right, plaintiff's claim begins to accrue when she knew or should have known that her constitutional rights had been violated.  Beck v. City of Muskogee Police Dep't, 195 F.3d 553, 557 (10th Cir. 1999).

Federal law may, however, delay the accrual date in certain circumstances.  See Heck v. Humphrey, 512 U.S. 477, 486–87 (1994).  When Section 1983 claims are premised on the invalidity or duration of plaintiff's confinement, as a prerequisite to suit, plaintiff must show that her "conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question

by a federal court's issuance of a writ of habeas corpus."  Id. at 487.  Therefore, when a Section 1983 claim "necessarily implies the invalidity" of a conviction, plaintiff's claim does not accrue "until the conviction or sentence has been invalidated."  Id.  Similarly, because malicious prosecution claims require plaintiff to show that the original proceeding terminated in her favor, malicious prosecution claims do not accrue until the favorable termination date.  Shrum v. Cooke, 60 F.4th 1304, 1310 (10th Cir. 2023).  The accrual date therefore depends on the substance of the claim.  Beck, 195 F.3d at 557.

Plaintiffs argue that their claims against Mitchell are timely.  Specifically, Buchhorn argues that she learned of her constitutional injury on January 3, 2023, when she learned of the suppressed exculpatory evidence, and that the Court should use January 3, 2023 as the accrual date.  The complaint, however, alleges that at Buchhorn's post-trial hearing, Mitchell admitted that contrary to his prior representations to the court, no statistics supported his cause of death theory, and his "depolarization" theory was something that he created to support Buchhorn's prosecution. Unfortunately, for purposes of analyzing the statute of limitations, plaintiffs do not allege the date of this hearing.  From the face of the complaint, the Court can conclude that the hearing occurred on some date between July 26, 2018 (when the jury returned its verdict) and November 18, 2019 (when the district court denied Buchhorn's motion for a new trial and sentenced her to 123 months in prison).  Even assuming that the hearing was on November 18, 2019, plaintiffs' claims against Mitchell stemming from his fabrication of a false cause of death to convict Buchhorn fall far outside the two-year limitations period.  Therefore, the statute of limitations bars plaintiffs' claims against Mitchell unless federal law delays accrual.

### 1.    Count 1

Count 1 alleges that Mitchell deprived Buchhorn of her Fourteenth Amendment

right to a fair trial by fabricating and perpetuating a knowingly false cause of death. At the latest, Buchhorn learned of Mitchell's false evidence on November 18, 2019. Allegations of fabricated, false evidence necessarily imply the invalidity of a criminal conviction, so Count 1 did not accrue until Buchhorn's sentence was invalidated. See Eikenberry v. Seward Cnty., Kan., 734 F. App'x 572, 574–75 (10th Cir. 2018) (creation of false evidence, concealment of exculpatory evidence and conspiracy to frame necessarily imply invalid conviction). Here, Buchhorn has alleged that on August 16, 2021, the Kansas Court of Appeals reversed the district court's denial of a new trial and remanded the case based on ineffective assistance of counsel. On August 19, 2022, the Kansas Supreme Court affirmed. Therefore, at the latest, Buchhorn's claim accrued on August 19, 2022, when the Kansas Supreme Court invalidated Buchhorn's conviction and remanded the case for a new trial. Plaintiffs filed suit on December 16, 2024—two years and four months later. The statute of limitations therefore bars Count 1.

       **2.**     **Count 2**

Count 2 alleges that Mitchell conspired to deprive Buchhorn of her Fourteenth Amendment right to a fair trial by fabricating and perpetuating a knowingly false cause of death. Conspiracy claims under Section 1983 are inherently tied to the underlying constitutional deprivation, which impacts when the claim accrues. See Robinson v. Maruffi, 895 F.2d 649, 654 (10th Cir. 1990). As noted, at the latest, on November 18, 2019, Buchhorn learned that Mitchell had perpetuated false evidence. Nevertheless, allegations of a conspiracy to fabricate false evidence necessarily imply the invalidity of Buchhorn's criminal conviction, so federal law delays the accrual date of Count 2 until August 19, 2022 when the Kansas Supreme Court invalidated Buchhorn's sentence. See Eikenberry, 734 F. App'x at 575. Plaintiffs filed suit on December 16, 2024. The statute of limitations bars Count 2.

### 3.    Count 3

Count 3 alleges that Mitchell deprived Buchhorn of her Fourteenth Amendment right to a fair trial by intentionally (1) withholding and suppressing exculpatory evidence, i.e. Mackey-Bojack's cardiac report, in violation of Brady, and (2) fabricating false evidence to obtain her conviction.  As to the latter part of Count 3, for the reasons stated above, the statute of limitations bars claims against Mitchell for fabricating false evidence.  As to the former, however, Buchhorn alleges that she did not learn of the exonerating evidence until on or around January 3, 2023, with Dr. Turner's report.  Accordingly, Buchhorn did not know or have reason to know that Mitchell suppressed exculpatory evidence until that date.  Buchhorn's claim for a Brady violation therefore falls well within the two-year limitations period.

### 4.    Count 4

Count 4 alleges that Mitchell deprived Buchhorn of her Fourth Amendment right to be free from unreasonable seizure and her Fourteenth Amendment right to due process by causing her to be unreasonably seized and subjected to judicial proceedings for which no probable cause existed.  Count 4 is a malicious prosecution claim.  Unlike other claims under Section 1983, malicious prosecution claims require plaintiffs to show that the original proceeding terminated in their favor.[7]  Shrum, 60 F.4th at 1310.  Therefore, Buchhorn's malicious prosecution claims accrued when the underlying criminal proceeding terminated in her favor.  See id.; see also Heck, 512 U.S. at 484.  "A favorable termination" requires that the original criminal proceeding terminated "in a manner indicative of [Buchhorn's] innocence."  Margheim v. Buljko, 855 F.3d

---

[7]    To state a claim for malicious prosecution under Section 1983, plaintiffs must allege that (1) Mitchell caused Buchhorn's continued confinement or prosecution; (2) the original action terminated in Buchhorn's favor; (3) no probable cause supported the original arrest, continued confinement or prosecution; (4) Mitchell acted with malice; and (5) plaintiffs sustained damages.  See Shrum, 60 F.4th at 1310.

1077, 1089 (10th Cir. 2017).  "[P]laintiff must show more than just the withdrawal or vacating of criminal charges—the plaintiff must demonstrate that the criminal proceedings were dismissed for reasons indicative of innocence, and not because of an agreement of compromise, an extension of clemency, or technical grounds having little or no relation to the accused's guilt."  M.G. v. Young, 826 F.3d 1259, 1262 (10th Cir. 2016).

Here, the Kansas Court of Appeals and Kansas Supreme Court invalidated Buchhorn's conviction based on ineffective assistance of counsel—i.e. grounds having little relation to Buchhorn's guilt.  Moreover, Buchhorn's case did not end at that time.  See Robinson, 895 F.2d at 654 (malicious prosecution claim covered appeal, reversal of conviction and retrial because plaintiff remained subject to false charges).  The Kansas appellate courts remanded it for a new trial.  On November 1, 2022, without Mitchell's testimony, the district court found that the state did not have probable cause to continue Buchhorn's prosecution.  The district court ordered a new preliminary examination and jury trial.  On November 14, 2022, given the district court's finding of insufficient probable cause, Buchhorn filed a Verified Petition for Writ of Habeas Corpus with the Kansas Court of Appeals, seeking dismissal of her criminal charges and immediate release from continued unlawful detention.  On December 16, 2022, Judge Pokorny dismissed Buchhorn's criminal case, stating that because the state failed to disclose a new expert, it could not establish a cause of death.

Taking as true the allegations in the complaint, Buchhorn received a favorable termination on December 16, 2022, when Judge Pokorny dismissed the criminal case for lack of probable cause.  Count 4 therefore accrued on December 16, 2022.  Plaintiffs filed suit on December 16, 2024—exactly two years later.  Accordingly, Count 4 is timely.

**5.    Count 5**

Count 5 alleges that Mitchell conspired with all defendants to deprive Buchhorn of her First and Fourteenth Amendment liberty interests in the care, custody, control and association of her children and association with her husband by (1) maliciously causing Buchhorn's prosecution; (2) fabricating and perpetuating false evidence to detain and convict her; (3) withholding exculpatory evidence; (4) pursuing an appeal and retrial post-reversal; and (5) continuing to publicly declare Buchhorn's guilt following the district court's dismissal of the charges. As noted, conspiracy claims under Section 1983 are inherently tied to an underlying constitutional deprivation, which impacts when the claim accrues. See Robinson, 895 F.2d at 654 (conspiracy to maliciously prosecute claim accrued when malicious prosecution claim accrued). The Court therefore considers each sub-part of Count 5.

Plaintiffs' first claim—maliciously causing Buchhorn's prosecution—accrued when the underlying criminal proceedings terminated in Buchhorn's favor. Id. As noted, Buchhorn received a favorable termination on December 16, 2022. Therefore, this claim is timely.

Plaintiffs' second claim—fabricating and perpetuating false evidence to detain and convict her—necessarily implies the invalidity of Buchhorn's conviction. Accordingly, this claim accrued on August 19, 2022, so the statute of limitations bars the claim.

Plaintiffs' third claim—withholding exculpatory evidence—accrued when Buchhorn learned of the exculpatory evidence on or around January 3, 2023. This claim is timely.

Plaintiffs' fourth claim—pursuing an appeal and retrial post-reversal—falls within the realm of malicious prosecution claims, which generally encompass the entire prosecution, including appeals and retrials which continue to lack probable cause, until plaintiff receives a favorable termination. See id. (malicious prosecution claim covered appeal, reversal of conviction

and retrial because plaintiff remained subject to false charges); see also Bryson v. Macy, 611 F. Supp. 2d 1234, 1254–55 (W.D. Okla. 2009) (malicious prosecution claim encompasses entire prosecution, including continued prosecution after reversal of conviction).  Therefore, plaintiffs' claim accrued December 16, 2022, and is timely.

Plaintiffs' fifth claim—continuing to publicly declare Buchhorn's guilt following the district court's dismissal of the charges—accrued when plaintiff knew or should have known of the injury.  Plaintiffs allege that on January 4 and February 4, 2023, Valdez and Seiden, Mitchell's co-conspirators, made public statements referring to Buchhorn's guilt.  Taking as true the allegations in plaintiffs' complaint, this claim is timely.

### 6.    Count 7

Count 7 alleges that Mitchell deprived plaintiffs of their First and Fourteenth Amendment rights to familial association by (1) causing Buchhorn's arrest and unlawful detainment; (2) fabricating false evidence; (3) committing perjury; and (4) suppressing exculpatory evidence.  Buchhorn learned of Mitchell's perjury and false evidence at the post-trial hearing, which the Court infers occurred at the latest on November 18, 2019.  Therefore, plaintiffs' first, second and third claims under Count 7 accrued on that date, unless federal law delays accrual. Familial association claims necessarily imply the invalidity of a conviction because to succeed on the claim, plaintiffs will have to show that Mitchell fabricated false evidence to detain her.  See McIntyre v. Unified Gov't of Wyandotte Cnty. & Kansas City, Kan., No. 18-2545-KHV, 2020 WL 1028303, at *12 (D. Kan. Mar. 3, 2020) (substance of familial association claim implicates validity of conviction).  Plaintiffs' first, second and third claims under Count 7 accrued on August 19, 2022, and so the statute of limitations bars those claims.  As to the fourth claim under Count 7—that Mitchell suppressed exculpatory evidence—for the reasons stated above, this claim

accrued on January 3, 2023 and is therefore timely.

The Court sustains Mitchell's motion to dismiss Count 1 (fabricating and perpetuating a knowingly false cause of death), Count 2 (conspiring to fabricate and perpetuate a knowingly false cause of death), Count 3 (fabricating false evidence), Count 5 (conspiring to fabricate and perpetuate false evidence) and Count 7 (depriving plaintiffs of their right to familial association by causing Buchhorn's arrest and unlawful detainment, fabricating false evidence and committing perjury) as untimely. The Court overrules Mitchell's motion to dismiss Count 3 (withholding and suppressing exculpatory evidence), Count 4 (malicious prosecution), Count 5 (conspiring to maliciously cause Buchhorn's prosecution, withhold exculpatory evidence, pursue an appeal and retrial post-reversal and continue to publicly declare Buchhorn's guilt following the district court's dismissal of the charges) and Count 7 (depriving plaintiffs of their right to familial association by suppressing exculpatory evidence).

B.    Whether Mitchell Is Entitled To Qualified Immunity

Mitchell argues that even if plaintiffs' claims are timely, he is entitled to qualified immunity. To survive a Rule 12(b)(6) motion to dismiss based on qualified immunity, plaintiffs "must allege facts sufficient to show (assuming they are true) that the defendants plausibly violated their constitutional rights." Robbins, 519 F.3d at 1249.

Government officials sued in their individual capacity are entitled to qualified immunity from suit and liability for civil damages for performing discretionary functions so long as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)); Dodds v. Richardson, 614 F.3d 1185, 1191 (10th Cir. 2010). The Supreme Court has set forth a two-step inquiry for resolving qualified immunity

claims.  <u>Pearson</u>, 555 U.S. at 232.  First, plaintiffs must allege that Mitchell violated a constitutional right.  <u>See id.</u>  Second, the Court must determine whether the right at issue was clearly established at the time of Mitchell's conduct.  <u>See id.</u>

Mitchell argues that because all claims against him are time-barred, plaintiffs have not alleged violation of a constitutional right and he is entitled to qualified immunity.  The Court, however, has already concluded that some of plaintiffs' claims are timely, so it turns to his remaining arguments.  Mitchell argues that (1) it is not clearly established law that coroners are subject to <u>Brady</u> disclosures; and (2) plaintiffs fail to state a claim for conspiracy and therefore fail to allege violation of a constitutional right.  Mitchell does not argue that Buchhorn has not plausibly alleged malicious prosecution, so the Court does not address the issue.

### 1.    Whether <u>Brady</u> Applies To Coroners

Plaintiffs allege in Counts 3, 5 and 7 that Mitchell withheld and suppressed exculpatory evidence, which violated Buchhorn's Fourteenth Amendment right to a fair trial.

In <u>Brady</u>, the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment."  373 U.S. at 87.  To state a claim for a <u>Brady</u> violation, plaintiffs must allege that "(1) the prosecution suppressed evidence, (2) the evidence was favorable to the defendant, and (3) the evidence was material."  <u>Johnson v. City of Cheyenne</u>, 99 F.4th 1206, 1226 (10th Cir. 2024).  While <u>Brady</u> typically concerns the conduct of prosecutors, "the prosecution" includes "not only the individual prosecutor handling the case, but also extends to the prosecutor's entire office, as well as the law enforcement personnel and other arms of the state involved in investigative aspects of a particular criminal venture."  <u>Smith v. Sec'y of N.M. Dep't of Corr.</u>, 50 F.3d 801, 824 (10th Cir. 1995) (citation omitted).  For example, in <u>Pierce v. Gilchrist</u>, the Tenth

Circuit held that a forensic chemist in the Oklahoma City Police Department was not entitled to qualified immunity for withholding exculpatory evidence because in 1986, <u>Brady</u> obligations were clearly established.  359 F.3d 1279, 1299 (10th Cir. 2004).

Mitchell argues that even if he did violate <u>Brady</u>, it was not clearly established that <u>Brady</u>'s disclosure obligations extended to him.  The Court disagrees.  A constitutional right is clearly established when an on-point Supreme Court or published Tenth Circuit case establishes the unlawfulness of defendant's conduct.  <u>Cummings v. Dean</u>, 913 F.3d 1227, 1239 (10th Cir. 2019).  Although the Supreme Court has warned against defining a clearly established right "at a high level of generality" and that the law must be "particularized to the facts of the case," this does not mean that a right is only clearly established if a case exists that is factually identical.  <u>Estate of Ceballos v. Husk</u>, 919 F.3d 1204, 1215 (10th Cir. 2019) (citations omitted).  In other words, the "clearly established" prong does not require plaintiffs to show that "the very act in question previously was held unlawful."  <u>Weigel v. Broad</u>, 544 F.3d 1143, 1153 (10th Cir. 2008) (citations omitted).

Here, the Court need not decide whether <u>Brady</u> specifically applies to coroners because Tenth Circuit law explicitly states that <u>Brady</u> extends to "other arms of the state involved in investigative aspects of a particular criminal venture."  <u>Smith</u>, 50 F.3d at 824.  The Douglas County Coroner's Office is an agency and department of Douglas County, a Kansas municipality, and Douglas County employed Mitchell as District Coroner.  Therefore, between 2016 and 2018, at the time of Mitchell's conduct, it was well established that Mitchell—a state actor involved in investigating O.O.'s death—could not suppress or withhold exculpatory evidence in violation of <u>Brady</u>.  Mitchell is not entitled to qualified immunity for his alleged <u>Brady</u> violations.

### 2.     Whether Plaintiffs Have Alleged Conspiracy

Mitchell argues that because plaintiffs have not alleged a specific agreement or meeting of the minds to violate Buchhorn's constitutional rights, they have not alleged a conspiracy under Section 1983.

To state a claim of conspiracy under Section 1983, plaintiffs must allege (1) specific facts that show an agreement and concerted action among defendants and (2) an actual deprivation of a constitutional right.  Douglass v. Garden City Cmty. Coll., 543 F. Supp. 3d 1043, 1060 (D. Kan. 2021).  Plaintiffs must allege facts that manifest a "specific goal to violate [plaintiffs'] constitutional rights by engaging in a particular course of action."  Bledsoe v. Jefferson Cnty., Kan., 275 F. Supp. 3d 1240, 1252 (D. Kan. 2017).  Because direct evidence of an agreement to join a conspiracy is rare, the Court can infer assent "from acts furthering the conspiracy's purpose." Id.  Accordingly, allegations of an express agreement are not necessary to state a viable claim. Bledsoe v. Carreno, 53 F.4th 589, 609 (10th Cir. 2022).  "[W]hile the participants in the conspiracy must share the general conspiratorial objective, they need not know all the details of the plan designed to achieve the objective or possess the same motives for desiring the intended conspiratorial result."  Id. (quotations and brackets omitted).  The Court decides on a case-by-case basis whether plaintiffs have alleged sufficient facts to support a conspiracy claim.  Bledsoe, 275 F. Supp. 3d at 1252.

Here, plaintiffs have alleged a specific goal of the conspiracy—to frame Buchhorn despite medical evidence that O.O. died of natural causes.  Plaintiffs have alleged that (1) Mitchell, an employee of Douglas County, did not observe O.O.'s heart during the autopsy; (2) Mitchell possessed Mackey-Bojack's report which revealed that the left ventricle wall of O.O.'s heart was deprived of oxygen (ischemic damage) and because this damage lacked changes to the cells, this

pathophysiologic process took place between 12 to 24 hours before O.O.'s death; (3) during the autopsy, Mitchell speculated that Buchhorn had harmed O.O. immediately before his death; (4) on June 13, 2017, Douglas County and Eudora issued Mitchell's report of death, which stated that the fossa ovalis was closed, contradicting Mackey-Bojack's conclusions; (5) Douglas County and Eudora knew that Mitchell's statements about O.O's cause of death were false; (6) even so, Douglas County and Eudora interrogated Buchhorn repeatedly, subjected her home, clothing, electronics and documented communications to a rigorous forensic examination and interviewed other parents from the daycare to search for evidence of her guilt; (7) on April 14, 2017, Douglas County, Eudora and Mitchell caused Buchhorn to be charged with murder; (8) the information against Buchhorn relied entirely on Mitchell, his theory of death and his suppression of the cardiac autopsy report; (9) Detective Flick with the Eudora Police Department submitted an affidavit to support the arrest warrant, which relied solely on Mitchell's report and theory as to O.O.'s death; (10) based on Mitchell's testimony at the preliminary hearing, the Douglas County District Court concluded that probable cause existed to continue Buchhorn's prosecution; (11) at trial, Mitchell offered the same theory that O.O. died due to a blow to the head which interfered with the brain's ability to control breathing, causing O.O. to stop breathing and immediately or nearly immediately suffocate; (12) on July 26, 2018, the jury found Buchhorn guilty based on Mitchell's perjury; (13) the state appealed the Kansas Court of Appeals' reversal of Buchhorn's conviction, despite knowing that Mitchell's evidence was false; (14) despite the district court dismissing Buchhorn's charges, Valdez and Seiden made public statements regarding her guilt; and (15) because of defendants' actions, Buchhorn was imprisoned for over 2,000 days, separated from her children and husband.

Plaintiffs have not alleged direct evidence of an agreement between defendants.

Nevertheless, the Court can infer assent based on acts furthering the purpose of the conspiracy. Accordingly, taking as true the allegations in plaintiffs' complaint, plaintiffs have easily alleged that Mitchell participated in a conspiracy with the other defendants to deprive Buchhorn of constitutional rights. Mitchell raises no argument that the law was not clearly established at the time of his conduct, so the Court does not address that issue.

      C.      <u>Whether Mitchell Is Entitled To Absolute Immunity</u>

Lastly, Mitchell argues that to the extent plaintiffs' claims relate to his testimony at trial, he is entitled to absolute immunity. <u>See</u> <u>Briscoe v. LaHue</u>, 460 U.S. 325, 326 (1983) ("[W]itnesses are absolutely immune from damages liability based on their testimony."). In response, plaintiffs assert that they are not bringing any claims related to Mitchell's perjury, but that they highlight his perjury as evidence of defendants' conspiracy and ongoing <u>Brady</u> violations. Even so, Mitchell's perjury is intertwined with plaintiffs' remaining claims against him. Therefore, to the extent that plaintiffs rely on Mitchell's perjury to support their claims, Mitchell is entitled to absolute immunity for his testimony.

To conclude, the Court sustains Mitchell's motion to dismiss Count 1 (fabricating and perpetuating a knowingly false cause of death), Count 2 (conspiring to fabricate and perpetuate a knowingly false cause of death), Count 3 (fabricating false evidence), Count 5 (conspiring to fabricate and perpetuate false evidence) and Count 7 (depriving plaintiffs of their right to familial association by causing Buchhorn's arrest and unlawful detainment, fabricating false evidence and committing perjury) as untimely. It overrules Mitchell's motion to dismiss Count 3 (withholding and suppressing exculpatory evidence), Count 4 (malicious prosecution), Count 5 (conspiring to maliciously cause Buchhorn's prosecution, withhold exculpatory evidence, pursue an appeal and retrial post-reversal and continue to publicly declare Buchhorn's guilt following the district court's

dismissal of the charges) and Count 7 (depriving plaintiffs of their right to familial association by suppressing exculpatory evidence).

## II.    Douglas County And Eudora's Motions To Dismiss

The motions to dismiss by Douglas County and Eudora raise identical issues, so the Court considers them together. Plaintiffs bring Counts 5, 6 and 8 against Douglas County and Eudora. Specifically, plaintiffs allege that Douglas County and Eudora (1) conspired to deprive Buchhorn of her First and Fourteenth Amendment liberty interests in the care, custody, control and association of her children and association with her husband by (a) maliciously causing Buchhorn's prosecution; (b) fabricating and perpetuating false evidence to detain and convict her; (c) withholding exculpatory evidence; (d) pursuing an appeal and retrial; and (e) continuing to publicly declare Buchhorn's guilt following the district court's dismissal of the charges (Count 5); (2) maintained a policy, practice or custom of unconstitutional misconduct (Count 6); and (3) deprived Buchhorn of her Fourth Amendment right to be free from unreasonable seizure and her Fourteenth Amendment right to due process by (a) unreasonably seizing her property; (b) destroying her property; and/or (c) taking her property without just compensation (Count 8).

Douglas County and Eudora seek to dismiss these counts for failure to state claims upon which relief can be granted.  Specifically, Douglas County and Eudora argue that (1) because plaintiffs have not alleged a municipal policy or custom, they have failed to state a claim for municipal liability under Section 1983; (2) because plaintiffs have not alleged an agreement among defendants to deprive Buchhorn of a constitutional right, plaintiffs fail to state a claim for conspiracy; and (3) because an adequate post-deprivation remedy exists under Kansas law for seized items, Buchhorn fails to state a claim for deprivation of property.

A.    <u>Whether Plaintiffs Have Alleged Municipal Liability</u>

Generally, municipalities are not liable under Section 1983 for the actions of its employees.

<u>Waller v. City & Cty. of Denver</u>, 932 F.3d 1277, 1283 (10th Cir. 2019).  Under <u>Monell</u>, however,

"a municipality can be liable for acts for which the municipality itself is actually responsible, or

acts which the municipality has officially sanctioned or ordered." <u>McIntyre</u>, 2020 WL 1028303,

at *32 (quotations omitted); <u>see</u> <u>Monell v. Dep't of Soc. Servs. of City of New York</u>, 436 U.S. 658

(1978).

To state a claim under <u>Monell</u>, plaintiffs must allege (1) a constitutional violation by a

municipal employee, (2) the existence of a municipal custom or policy and (3) a direct causal link

between the custom or policy and the violation alleged.  <u>Id.</u>  Here, Douglas County and Eudora

assert that plaintiffs' allegations are insufficient to state a claim under <u>Monell</u> because plaintiffs

have not alleged a custom or policy for the alleged constitutional violations.

To allege a municipal policy or custom, plaintiffs may allege:

(1) a formal regulation or policy statement; (2) an informal custom amounting to a
widespread practice that, although not authorized by written law or express
municipal policy, is so permanent and well settled as to constitute a custom or usage
with the force of law; (3) the decisions of employees with final policymaking
authority; (4) the ratification by such final policymakers of the decisions—and the
basis for them—of subordinates to whom authority was delegated subject to these
policymakers' review and approval; or (5) the failure to adequately train or
supervise employees, so long as that failure results from deliberate indifference to
the injuries that may be caused.

<u>Bryson v. City of Okla. City</u>, 627 F.3d 784, 788 (10th Cir. 2010) (quotation marks and brackets

omitted).  Here, plaintiffs rely on informal customs amounting to a widespread practice,

ratification by final policymakers and failure to adequately train and supervise to allege a

municipal policy or custom.

### 1.    Informal Customs

To allege informal, unwritten policies, customs or practices, plaintiffs must allege that the misconduct was "widespread"—i.e. that it involved a "series of decisions."  City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988).  The Court must determine whether the complaint sufficiently alleges the existence of a "widespread practice" that is "so permanent and well settled" so as to constitute a custom with the force of law.  Bryson, 627 F.3d at 788.  Plaintiffs "can plead either a pattern of multiple similar instances of misconduct—no set number is required, and the more unique the misconduct is, and the more similar the incidents are to one another, the smaller the required number will be to render the alleged policy plausible"—or statements by municipal employees attesting to the policy's existence.  Pino v. Weidl, No. 20-2044-JAR, 2020 WL 3960424, at *6 (D. Kan. July 13, 2020); see Sexton v. City of Colorado Springs, 530 F. Supp. 3d 1044, 1070 (D. Colo. 2021) (two incidents over several years insufficient to show practice so permanent and well settled that it constitutes a custom with force of law).

Single decisions by a municipal policy maker—such as negligently hiring an employee with a history of misconduct—may trigger liability under Monell.  Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown, 520 U.S. 397, 404 (1997).  The Supreme Court has cautioned, however, that "[t]o prevent municipal liability for a hiring decision from collapsing into respondeat superior liability, a court must carefully test the link between the policymaker's inadequate decision and the particular injury alleged."  Id. at 410.  That causal link between a municipal policy or custom and the constitutional deprivation is also intertwined with plausible allegations of deliberate indifference. See Prince v. Sheriff of Carter Cnty., 28 F.4th 1033, 1049 (10th Cir. 2022). Therefore, failure to scrutinize an applicant's background constitutes deliberate indifference "where adequate scrutiny of an applicant's background would lead a reasonable policymaker to

conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right." <u>Brown</u>, 520 U.S. at 411.

                i.     <u>Douglas County</u>

Plaintiffs allege that Douglas County maintained informal policies, procedures and customs that permitted its employees to (1) commit willful, intentional <u>Brady</u> violations; (2) commit perjury without fear of prosecution; (3) utilize improper investigative practices to obtain wrongful convictions; and (4) discourage, prevent and fail to investigate complaints of misconduct.

Plaintiffs have alleged that Mitchell possessed a well-documented and well-publicized history of unethical, unprofessional and illegal activities dating back to his time as Medical Examiner of Onondaga County, New York. Despite the allegations against him—that he routinely removed organs from corpses and donated them without the consent of the victims' families— Douglas County hired him and employed him as District Coroner for over 25 years. Mitchell's background put Douglas County on notice that a plainly obvious consequence of hiring him would be deprivation of federally protected rights. Furthermore, taking plaintiffs' allegations as true, Buchhorn's constitutional injury would not have occurred but for Douglas County employing Mitchell as District Coroner.

Plaintiffs also point to statements by Valdez about cases in the District Attorney's Office. Plaintiffs allege that on December 28, 2020—before being sworn in as District Attorney—Valdez represented that when she takes office, she would inherit many "botched cases" and would "need every bit of luck I can get." <u>Amended Complaint</u> (Doc. #59), ¶ 259. Plaintiffs have alleged that Douglas County (1) had received multiple complaints against Valdez and Seiden and (2) refused to prosecute Mitchell for his perjury in Buchhorn's case, supporting plaintiffs' allegations of

widespread misconduct. While plaintiffs have not proffered specific examples of similar misconduct, the Court can reasonably infer such a widespread practice based on these allegations. Therefore, taking all plaintiffs' allegations as true, plaintiffs have plausibly alleged that Douglas County maintained informal policies, customs or practices which culminated in widespread unconstitutional misconduct.

        ii.    <u>Eudora</u>

Plaintiffs raise identical allegations against Eudora. They allege that Eudora maintained informal policies, procedures and customs that permitted its employees to (1) commit willful, intentional <u>Brady</u> violations; (2) commit perjury without fear of prosecution; (3) utilize improper investigative practices to obtain wrongful convictions; and (4) discourage, prevent and fail to investigate complaints of misconduct.

Plaintiffs have not alleged that Eudora (1) was involved in hiring Mitchell; (2) directly received complaints against Valdez and Seiden; and (3) maintained policies separate from Douglas County which applied to the District Coroner's Office and District Attorney's Office. Moreover, plaintiffs have not even alleged that Mitchell, Valdez and Seiden were employees of Eudora separate from Douglas County. Accordingly, plaintiffs have not plausibly alleged that Eudora maintained informal policies, customs or practices which culminated in the widespread unconstitutional misconduct that harmed Buchhorn.

       **2.**    **Ratification**

Plaintiffs allege that Douglas County and Eudora (1) continued to reward and promote Mitchell, Valdez and Seiden; (2) allowed their conduct to occur openly without repercussions; (3) continued to sponsor Mitchell as the key witness in the case against Buchhorn; and (4) allocated more money to the District Attorney's Office to address complaints and ethics

investigations into Valdez and Seiden's misconduct.

A municipal entity becomes liable by way of ratification only "if a subordinate's position is subject to review by the municipality's authorized policymakers and the authorized policymakers approve a subordinate's decision and the basis for it." Moss v. Kopp, 559 F.3d 1155, 1169 (10th Cir. 2009). The municipality's failure to adequately investigate or discipline an employee does not count as ratification of the employee's conduct. Lynch v. Bd. of Cnty. Commissioners of Muskogee Cnty., Okla., 786 F. App'x 774, 787 (10th Cir. 2019); see also Cordova v. Aragon, 569 F.3d 1183, 1194 (10th Cir. 2009) (failure to discipline after alleged constitutional violation is insufficient to establish causal connection to violation).

Here, plaintiffs' ratification theory against both Douglas County and Eudora fails because they do not allege the official policymakers who allegedly ratified the individual defendants' conduct. See Moss, 559 F.3d at 1169 (affirming dismissal for failure to allege official policymaker approved conduct); see also Sexton, 530 F. Supp. 3d at 1072 (general allegations that city ratified conduct insufficient to identify official policymakers and municipal policy by ratification).

### 3.    Failure To Train And Supervise

In limited circumstances, a municipality's "decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." Connick v. Thompson, 563 U.S. 51, 61 (2011). To state a claim for municipal liability based on failure to train and supervise, plaintiffs must allege two elements: deliberate indifference and causation. Id. The municipality's failure to train must amount to deliberate indifference to the rights of persons with whom the untrained employees will come into contact. City of Canton v. Harris, 489 U.S. 378, 388 (1989). Deliberate indifference is a stringent standard. Connick, 563 U.S. at 61 ("A municipality's culpability for a deprivation of

rights is at its most tenuous where a claim turns on a failure to train.").  "The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm."  Barney v. Pulsipher, 143 F.3d 1299, 1307 (10th Cir. 1998).  Plaintiffs can allege notice by alleging a pattern of unconstitutional conduct. Waller, 932 F.3d at 1284.  "Deliberate indifference may be found absent a pattern of unconstitutional behavior only in a narrow range of circumstances where a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction."  Id. (internal quotations omitted).  As for causation, the municipality's failure must be the "moving force" behind the constitutional violation.  City of Canton, 489 U.S. at 389.

Here, plaintiffs allege no facts which would support a claim of failure to train or supervise. Standing alone, the fact that Mitchell, Valdez and Seiden were supposedly "unsatisfactorily trained" does not create municipal liability because their shortcomings may have resulted from factors other than inadequate training programs by Douglas County and Eudora.  See id. at 390. While plaintiffs have alleged misconduct by each, they fail to tie misconduct in this case to training by Douglas County and Eudora.  More fundamentally, however, plaintiffs do not even allege (1) whether Douglas County and Eudora trained their employees; (2) if so, how they trained their employees; (3) how such training was inadequate; (4) how Douglas County and Eudora supervised their employees; and (5) how such supervision was inadequate.  See Sexton, 530 F. Supp. 3d at 1072 (plaintiff failed to allege how officer was trained, who trained him or why training was deficient).  Absent such allegations, the Court is left with conclusory statements that (1) Douglas County and Eudora failed to train its employees and (2) no supervisor acted to prevent misconduct by Mitchell, Valdez or Seiden.  The Court disregards allegations which state only legal

conclusions.  See Iqbal, 556 U.S. at 679.  The Court cannot find that plaintiffs have plausibly alleged deliberate indifference or causation.  Plaintiffs' amended complaint therefore fails to allege a municipal policy or custom pursuant to failure to train or supervise.

To conclude, taking as true the facts before the Court, plaintiffs have plausibly alleged that Douglas County maintained informal policies, customs or practices which culminated in widespread constitutional misconduct.  Therefore, Douglas County may be liable under Section 1983 for the conduct of Mitchell, Valdez and Seiden.  The Court overrules its motion to dismiss Count 6.

As to Eudora, plaintiffs have not alleged that Eudora maintained informal policies, customs or practices, that an official policymaker ratified the conduct of Mitchell, Valdez or Seiden or that it failed to train and supervise Mitchell, Valdez and Seiden.  Accordingly, plaintiffs fail to state a claim for municipal liability against Eudora.  The Court therefore sustains its motion to dismiss Counts 5, 6 and 8.  See Galindo v. Taylor, 723 F. Supp. 3d 1008, 1024 (D. Kan. 2024) (dismissing all Section 1983 counts against municipal entity for failure to allege municipal liability under Monell).  The Court considers Count 5 and Count 8 only as to Douglas County.

B.    Whether Plaintiffs Have Alleged Conspiracy Under Count 5

Count 5 alleges that Douglas County conspired to deprive Buchhorn of her First and Fourteenth Amendment liberty interests in the care, custody, control and association of her children and association with her husband by (a) maliciously causing Buchhorn's prosecution; (b) fabricating and perpetuating false evidence used to detain and convict her; (c) withholding exculpatory evidence; (d) pursuing an appeal and retrial; and (e) continuing to publicly declare Buchhorn's guilt following the district court's dismissal of the charges.  Douglas County argues that because plaintiffs have not alleged an agreement among defendants to deprive Buchhorn of a

constitutional right, the Court should dismiss Count 5.

To state a claim of conspiracy under Section 1983, plaintiffs must allege (1) specific facts that show an agreement and concerted action among defendants and (2) an actual deprivation of a constitutional right. Douglass, 543 F. Supp. 3d at 1060. Because direct evidence of an agreement to join a conspiracy is rare, the Court can infer assent "from acts furthering the conspiracy's purpose." Bledsoe, 275 F. Supp. 3d at 1252. Here, as noted, plaintiffs have alleged a specific goal of the conspiracy—to frame Buchhorn despite medical evidence that O.O. died of natural causes. Further, as outlined in Section I.B.2, plaintiffs have alleged sufficient facts for the Court to infer assent based on acts furthering the conspiracy's purpose. Accordingly, taking as true the allegations in plaintiffs' complaint, plaintiffs have alleged that Douglas County participated in a conspiracy to deprive Buchhorn of constitutional rights. The Court overrules its motions to dismiss Count 5.

C.    Whether State Law Remedies Preclude Count 8

Count 8 alleges that Douglas County unreasonably seized Buchhorn's property, destroyed it and/or took it without just compensation.

The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Seizures made pursuant to a valid search warrant are reasonable, so long as the search and seizure do not exceed the bounds of the warrant. United States v. Palms, 21 F.4th 689, 700 (2021). Here, Buchhorn alleges that on October 1 and October 5, 2016, Douglas County unreasonably seized her property during searches of her home. Buchhorn alleges that both

searches were pursuant to a search warrant. She does not allege—or seemingly challenge—the probable cause or affirmations underlying the warrants. Buchhorn's statements that Douglas County unreasonably seized her property are therefore conclusory, and the Court disregards them. See Iqbal, 556 U.S. at 679. Buchhorn has failed to allege an unreasonable seizure in violation of the Fourth Amendment.

As to Buchhorn's allegations post-seizure—that Douglas County destroyed her property and/or took it without just compensation—these claims fall under the Fourteenth Amendment's due process clause. Kansas Motorcycle Works USA, LLC v. McCloud, 569 F. Supp. 3d 1112, 1121 (D. Kan. 2021). "[P]roperty loss claims are not cognizable under § 1983 in federal court when a state's post-deprivation remedies are adequate to protect a plaintiff's procedural due process rights. Where states provide an adequate remedy, that remedy itself constitutes the due process required by the Fourteenth Amendment." Schlobohm v. Hayden, No. 22-3314-JWL, 2023 WL 1434296, at *7 (D. Kan. Feb. 1, 2023). Courts in this district have found that Kansas provides adequate post-deprivation remedies. See id. Kansas law (1) provides a procedure for actions to recover personal property, see K.S.A. § 60-1005; (2) authorizes a replevin action for property in the custody of an officer because of any legal process, see id.; (3) recognizes conversion claims; (4) authorizes claims pursuant to the Kansas Tort Claims Act, see K.S.A. § 75-6101 et seq.; (5) provides a statutory scheme for returning property seized as evidence, see K.S.A. § 22-2512; and (6) authorizes claims pursuant to the Kansas Standard Asset Seizure and Forfeiture Act, see K.S.A. § 60-4101 et seq. Schlobohm, 2023 WL 1434296, at *7.

As noted, Buchhorn does not challenge pre-deprivation process, i.e. she does not challenge the validity of the search warrant by which her property was seized. Douglas County argues that because an adequate post-deprivation remedy exists under Kansas law for seized items, Buchhorn

fails to state a claim under Count 8. The Court agrees. Given Kansas's ample avenues for property loss claims, Buchhorn fails to state a plausible constitutional claim for destruction and/or taking of property without just compensation. The Court sustains Douglas County's motion to dismiss Count 8 for failure to state a claim.

### III.    Valdez And Seiden's Motion To Dismiss

Against Valdez and Seiden, plaintiffs bring Counts 1, 2, 5 and 8. Plaintiffs allege that Valdez and Seiden (1) deprived Buchhorn of her Fourteenth Amendment right to a fair trial by fabricating and perpetuating a knowingly false cause of death (Count 1); (2) conspired to deprive Buchhorn of her Fourteenth Amendment right to a fair trial by fabricating and perpetuating a knowingly false cause of death (Count 2); (3) conspired to deprive Buchhorn of her First and Fourteenth Amendment liberty interests in the care, custody, control and association of her children and association with her husband by (a) maliciously causing Buchhorn's prosecution; (b) fabricating and perpetuating false evidence used to detain and convict her; (c) withholding exculpatory evidence; (d) pursuing an appeal and retrial; and (e) continuing to publicly declare Buchhorn's guilt following the district court's dismissal of the charges (Count 5); and deprived Buchhorn of her Fourth Amendment right to be free from unreasonable seizure and her Fourteenth Amendment right to due process by (a) unreasonably seizing her property; (b) destroying her property; and/or (c) taking her property without just compensation (Count 8).

As noted, Valdez and Seiden seek to dismiss all four counts for failure to state a claim upon which relief can be granted. Specifically, Valdez and Seiden argue that they are entitled to absolute prosecutorial immunity on Count 1 (fabricating and perpetuating a knowingly false cause of death), Count 2 (conspiracy to fabricate and perpetuate a knowingly false cause of death) and Count 5 (conspiracy to deprive Buchhorn of the care, custody, control and association of her

children and association with her husband). They also argue that they are entitled to qualified immunity on all counts and that the statute of limitations bars plaintiffs' claims.

To date, the parties have largely disputed the timeline of Valdez and Seiden's alleged involvement with Buchhorn's criminal prosecution. On March 7, 2025, the Court ordered plaintiffs to amend their complaint to clarify which claims and allegations applied to Valdez and Seiden. Order (Doc. #55). On March 21, 2025, plaintiffs amended their complaint, asserting Counts 1, 2, 5 and 8 against Valdez and Seiden. These counts, however, also contain allegations specific to Buchhorn's prosecution. Accordingly, Valdez and Seiden ask the Court to take judicial notice of certain facts in Douglas County District Court records about their involvement with Buchhorn's prosecution.

The Court need not do so, however. Plaintiffs' complaint sets forth a chronological timeline of the events surrounding Buchhorn's prosecution, and from the face of the complaint, Valdez and Seiden were not involved until the state's appeal to the Kansas Supreme Court. Because the Court can resolve Valdez and Seiden's motions to dismiss based on the allegations in the complaint, it overrules as moot their motion for judicial notice.

A.    Whether Valdez And Seiden Are Entitled To Absolute Immunity On Counts 1, 2 And 5

Valdez and Seiden claim that they are entitled to absolute immunity on Counts 1, 2 and 5 because they were acting as advocates for the state. Plaintiffs respond that because they do not bring claims against Valdez and Seiden for their conduct during Buchhorn's criminal case, Valdez and Seiden are not entitled to prosecutorial immunity.

Prosecutors enjoy absolute immunity from Section 1983 suits for damages when acting within the scope of their prosecutorial duties. Imbler v. Pachtman, 424 U.S. 409, 420 (1976). Absolute immunity attaches only to prosecutorial actions "intimately associated with the judicial

phase of the criminal process." Id. at 430.  Accordingly, prosecutors are entitled to absolute immunity for their decisions to prosecute, evidence-gathering actions, evaluation of evidence, determination of whether probable cause exists, determination of what information to show the Court and decisions to appeal.  Nielander v. Bd. of Cnty. Comm'rs of Cnty. of Republic, Kan., 582 F.3d 1155, 1164 (10th Cir. 2009); Schroeder v. Kochanowski, 311 F. Supp. 2d 1241, 1255 (D. Kan. 2004).  The Court takes a functional approach in deciding whether prosecutorial immunity applies.  Burns v. Reed, 500 U.S. 478, 485 (1991).  The Court considers "the nature of the function performed, not the identity of the actor who performed it."  Buckley v. Fitzsimmons, 509 U.S. 259, 269 (1993).  The determinative factor is therefore whether the prosecutor was acting as an advocate.  Chilcoat v. San Juan Cnty., 41 F.4th 1196, 1209 (10th Cir. 2022); Mink v. Suthers, 482 F.3d 1244, 1259 (10th Cir. 2007) (no prosecutorial immunity when prosecutor functions in role of administrator or investigative officer rather than advocate).

### 1.     Count 1

Count 1 alleges that Valdez and Seiden violated Buchhorn's Fourteenth Amendment rights to due process and a fair trial when they failed to correct and repeatedly published fabricated evidence that they knew to be false.  Buchhorn alleges that their misconduct resulted in the unjust continuation of her criminal appeal and prosecution.  Valdez and Seiden became involved in Buchhorn's case during the appeal process.  As to Buchhorn's claims that they used the fabricated evidence to continue her appeal and prosecution, Valdez and Seiden were acting as advocates for the state and are entitled to absolute immunity from suit.  See Imbler, 424 U.S. at 413, 421–22, 431 (prosecutor entitled to absolute immunity for knowingly using false evidence in state's case); Nielander, 582 F.3d at 1164 (absolute immunity for evaluation of evidence and determining what information to show court in presenting case); Robinson v.

Volkswagenwerk AG, 940 F.2d 1369, 1372 n.4 (10th Cir. 1991) (absolute immunity for failing to correct a misconception).  The Court sustains their motion to dismiss Count 1.

       2.      **Count 2**

      Count 2 alleges that Valdez and Seiden conspired with Mitchell to fabricate and perpetuate his knowingly false cause of death to frame and continue to frame Buchhorn for O.O.'s death.  Whether absolute immunity is available to Valdez and Seiden turns on the timeline of the alleged conspiracy.  Absolute immunity does not protect the act of fabricating evidence—or conspiring to fabricate evidence—to frame an individual during the preliminary investigation of a crime.  Buckley, 509 U.S. at 272–76; Bledsoe v. Vanderbilt, 934 F.3d 1112, 1118 (10th Cir. 2019) (prosecutor not entitled to absolute immunity of claim that he fabricated evidence to frame plaintiff for murder).  The reason behind this distinction is that "fabricating evidence while a crime remains unsolved is more akin to the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested."  Buckley, 509 U.S. at 273.  If, however, the claim involves the prosecutor's use of fabricated evidence at trial or in presenting the state's case, the prosecutor is entitled to absolute immunity.  Imbler, 424 U.S. at 416, 430–31.  Here, as noted, Valdez and Seiden became involved in Buchhorn's case during the appeal process, so Buchhorn does not plausible allege that they conspired with Mitchell to fabricate evidence to frame her.  As to her claim that Valdez and Seiden conspired with Mitchell to use the fabricated evidence to continue her case, Valdez and Seiden are entitled to absolute immunity.  The Court sustains their motion to dismiss Count 2.

       3.      **Count 5**

      Count 5 alleges that Valdez and Seiden conspired with Douglas County, Eudora and Mitchell to deprive Buchhorn of her First and Fourteenth Amendment liberty interests in the

care, custody, control and association of her children and association with her husband by (1) maliciously causing Buchhorn's prosecution; (2) fabricating and perpetuating false evidence used to detain and convict her; (3) withholding exculpatory evidence; (4) pursuing an appeal and retrial; and (5) continuing to publicly declare Buchhorn's guilt following the district court's dismissal of the charges.

### i.    Malicious Prosecution

Plaintiffs allege that Valdez and Seiden conspired to maliciously cause Buchhorn's prosecution. It is a "well-settled rule that prosecutors are entitled to absolute immunity for the malicious prosecution of someone whom [they] lacked probable cause" to prosecute. See Warnick v. Cooley, 895 F.3d 746, 752 (10th Cir. 2018) (quotations omitted)); see also Nielander, 582 F.3d at 1164 (decisions to prosecute and determinations whether probable cause exists entitled to absolute immunity). Accordingly, Valdez and Seiden are entitled to absolute immunity on this claim.

### ii.    Fabricating Evidence

For the reasons set forth above in Counts 1 and 2, Valdez and Seiden are entitled to absolute prosecutorial immunity for claims that during Buchhorn's appeal and on remand, they conspired to knowingly use fabricated evidence against her. See Imbler, 424 U.S. at 413, 421–22, 431 (prosecutor entitled to absolute immunity for knowingly using false evidence in state's case); Nielander, 582 F.3d at 1164 (absolute immunity for evaluation of evidence and determining what information to show court in presenting case); Robinson, 940 F.2d at 1372 n.4 (absolute immunity for failing to correct a misconception).

### iii.    Withholding Exculpatory Evidence

Plaintiffs allege that Valdez and Seiden conspired to withhold exculpatory

evidence. "Absolute prosecutorial immunity applies to both claims that a prosecutor willfully used perjurious testimony and claims that a prosecutor willfully suppressed evidence." Esquibel v. Brian Williamson, 421 F. App'x 813, 816 (10th Cir. 2010) (citing Imbler, 424 U.S. at 431 n.34); see also Robinson, 940 F.2d at 1372 n.4 (it is a "well-settled rule that a prosecutor cannot be held personally liable for the knowing suppression of exculpatory information" (quotation marks omitted)). Accordingly, Valdez and Seiden are entitled to absolute immunity.

### iv.    Pursing An Appeal

Plaintiffs allege that Valdez and Seiden conspired to pursue an appeal and retrial post-reversal. To the extent that this claim falls within the confines of plaintiffs' malicious prosecution claim, Valdez and Seiden are entitled to absolute immunity for their role as advocates of the state. See Warnick, 895 F.3d at 752. To the extent that plaintiffs bring this claim separately, Valdez and Seiden are still entitled to absolute immunity. See Schroeder, 311 F. Supp. 2d at 1255 (filing an appeal is "clearly within scope of the prosecutorial function"); Nielander, 582 F.3d at 1164 (decisions whether to prosecute subject to absolute immunity).

### v.    Public Declarations

Plaintiffs allege that Valdez and Seiden deprived Buchhorn of her First and Fourteenth Amendment liberty interests in the care, custody, control and association of her children and association with her husband when they continued to publicly declare Buchhorn's guilt following the district court's dismissal of the charges. Because no charges were pending against Buchhorn, Valdez and Seiden's declarations are not intimately associated with the judicial process. See Buckley, 509 U.S. at 277–78 (out-of-court false statements to press following indictment have no functional tie to judicial process). For this reason, they are not entitled to absolute immunity on this claim.

B.    <u>Whether Valdez And Seiden Are Entitled To Qualified Immunity On Counts 5 And 8</u>

When prosecutors are sued for performing discretionary functions rather than their prosecutorial duties, they are entitled to qualified immunity so long as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Pearson</u>, 555 U.S. at 231 (quoting <u>Harlow</u>, 457 U.S. at 818); <u>Dodds</u>, 614 F.3d at 1191. First, plaintiffs must allege that Valdez and Seiden violated a constitutional right. <u>See id.</u> Second, the Court must determine whether the right at issue was clearly established at the time of Valdez and Seiden's conduct. <u>See id.</u>

1.    **Count 5**

Plaintiffs' remaining claim under Count 5 is that Valdez and Seiden deprived Buchhorn of her First and Fourteenth Amendment liberty interests in the care, custody, control and association of her children and association with her husband when they continued to publicly declare Buchhorn's guilt following the district court's dismissal of the charges. At the time Valdez and Seiden made the challenged statements, Douglas County had dismissed all charges against Buchhorn and presumably, she was no longer in custody—though plaintiffs do not allege the exact date of her release. For this reason, the Valdez and Seiden's statements could not have plausibly deprived Buchhorn of the care, custody, control and association of her children and husband. Plaintiffs have failed to satisfy the first prong of the qualified immunity analysis: whether Valdez and Seiden deprived them of a constitutional right. Valdez and Seiden are entitled to qualified immunity on this claim.

2.    **Count 8**

Count 8 alleges that Valdez and Seiden deprived Buchhorn of her Fourth Amendment right to be free from unreasonable seizure and her Fourteenth Amendment right to

due process by (1) unreasonably seizing her property; (2) destroying her property; and/or (3) taking her property without just compensation.

For the reasons set forth in Section II.C., Buchhorn has failed to allege an unreasonable seizure in violation of the Fourth Amendment. Moreover, given Kansas's ample avenues for property loss claims, Buchhorn fails to state a plausible constitutional claim for destruction and/or taking of property without just compensation. Buchhorn fails to allege the first prong of qualified immunity, so Valdez and Seiden are entitled to qualified immunity on Count 8.

The Court sustains Valdez and Seiden's motion to dismiss in its entirety. The Court sustains their motion to dismiss Count 1 (fabricating and perpetuating a knowingly false cause of death), Count 2 (conspiring to fabricate and perpetuate a knowingly false cause of death) and Count 5 (conspiracy to fabricate and perpetuate false evidence, maliciously cause Buchhorn's prosecution, withhold exculpatory evidence and pursue an appeal and retrial post-reversal) based on absolute immunity. The Court sustains their motion to dismiss Count 5 (conspiracy to continue to publicly declare Buchhorn's guilt following the district court's dismissal of the charges) and Count 8 (unreasonable seizure of property, destruction of property and/or taking of property without just compensation) based on qualified immunity.

**IT IS THEREFORE ORDERED** that <u>The Defendant Erik Mitchell's Motion To Dismiss Amended Complaint</u> (Doc. #62) filed April 3, 2025 is **SUSTAINED in part and OVERRULED in part. The Court sustains Mitchell's motion to dismiss Count 1 (fabricating and perpetuating a knowingly false cause of death), Count 2 (conspiring to fabricate and perpetuate a knowingly false cause of death), Count 3 (fabricating false evidence), Count 5 (conspiring to fabricate and perpetuate false evidence) and Count 7 (depriving plaintiffs of their right to familial association by causing Buchhorn's arrest and unlawful detainment,**

fabricating false evidence and committing perjury) as untimely. It overrules Mitchell's motion to dismiss Count 3 (withholding and suppressing exculpatory evidence), Count 4 (malicious prosecution), Count 5 (conspiring to maliciously cause Buchhorn's prosecution, withhold exculpatory evidence, pursue an appeal and retrial post-reversal and continue to publicly declare Buchhorn's guilt following the district court's dismissal of the charges) and Count 7 (depriving plaintiffs of their right to familial association by suppressing exculpatory evidence).

**IT IS FURTHER ORDERED** that Defendant The Board Of County Commissioners Of The County Of Douglas County Kansas' Motion To Dismiss Plaintiffs' Amended Complaint For Failure To State A Claim (Doc. #64) filed April 4, 2025 is **SUSTAINED in part and OVERRULED in part.** The Court sustains Douglas County's motion to dismiss Count 8 (unreasonable seizure of property, destruction of property and/or taking of property without just compensation) for failure to state a claim. It overrules their motions to dismiss Count 5 (conspiracy to deprive plaintiffs of their constitutional right to familial association) and Count 6 (municipal liability).

**IT IS FURTHER ORDERED** that Motion To Dismiss The City Of Eudora, Kansas From Plaintiffs' Amended Complaint (Doc. #66) filed April 4, 2025 is **SUSTAINED. The Court dismisses Counts 5, 6 and 8 for failure to state a claim.**

**IT IS FURTHER ORDERED** that Joint Motion To Dismiss By Defendants Joshua Seiden & Suzanne Valdez (Doc. #68) filed April 4, 2025 is **SUSTAINED. The Court sustains their motion to dismiss Count 1 (fabricating and perpetuating a knowingly false cause of death), Count 2 (conspiring to fabricate and perpetuate a knowingly false cause of death) and Count 5 (conspiracy to fabricate and perpetuate false evidence, maliciously cause**

Buchhorn's prosecution, withhold exculpatory evidence and pursue an appeal and retrial post-reversal) based on absolute immunity.  It sustains their motion to dismiss Count 5 (conspiracy to continue to publicly declare Buchhorn's guilt following the district court's dismissal of the charges) and Count 8 (unreasonable seizure of property, destruction of property and/or taking of property without just compensation) based on qualified immunity.

IT IS FURTHER ORDERED that Motion To Take Judicial Notice And Brief In Support By Defendants Josh Seiden & Suzanne Valdez (Doc. #70) filed April 4, 2025 is OVERRULED as moot.

Dated this 2nd day of July, 2025 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge